### E. T. POLK *v.* R. K. WHITE.

**Parol Contract—Statute of Frauds.**

A parol contract within the statute of frauds is not void, and it may generally be relied upon as a defense to a suit brought upon an executory contract in writing.

**Specific Performance of Contracts.**

The specific execution of contracts is not a matter of right, but rests in the judicial discretion of the chancellor, and when it appears to be inequitable and oppressive to decree performance courts will withhold such decree.

APPEAL FROM LOUISVILLE CHANCERY COURT.

November 3, 1876.

OPINION BY JUDGE COFER:

We have been impressed with the importance of this case and the difficulty in deciding it, and have given the voluminous record careful and patient consideration. It presents the most perplexing conflicts of evidence, and the embarrassment always felt in such cases has been greatly increased in consequence of the introduction by each party of a large mass of irrelevant and incompetent evidence

which the luxury (to counsel) of employing stenographic reporters in taking depositions enabled them to introduce with an extraordinary minuteness of detail without much labor, much of which, under other circumstances, would probably have been omitted. The result of this mode of taking depositions is often to intersperse between the material and controlling facts a large mass of immaterial or incompetent matter, in consequence of which it is extremely difficult, by even the most careful reading and study of the record, to gather such parts of it as ought to control the decision.

The first question, in the natural order, is that arising on the cross-appeal, for if it shall be decided that the appellee's rights are those of a purchaser from the appellant, and not of a joint purchaser with him, it will follow that there must be an affirmance on the original appeal.

It is the duty of this court to affirm the judgments of inferior courts unless we are enabled to say they are erroneous. This we cannot say of the judgment declaring that these parties were joint purchasers. Our reading and study of the record and the argument of counsel have left us in such uncertainty of mind as to what the fact is, that were we to reverse the judgment we would feel as much doubt respecting the correctness of our own decision as we now feel with respect to that we are called upon to revise. Under such circumstances it is our duty to affirm. That which has been done should not be undone until a satisfactory conclusion has been reached that it was not properly done.

It is needless to enter into an analysis of the voluminous evidence, or to attempt to point out the facts and circumstances which have produced that uncertainty in our minds as to the relation of the parties to each other, in the transaction out of which this contest arose, which requires an affirmance. It is, however, insisted by counsel for the appellee that the paper sued upon is an absolute obligation to convey one undivided sixth of forty acres, and that it is not competent to prove by parol that there was a joint purchase. In this we do not concur, for conceding that a partnership to deal in land must be evidenced by a writing, it by no means follows that parol evidence is incompetent in this case. It is well settled that a parol contract within the statute of frauds is not void, and may generally be relied upon as a defense to a suit brought upon an executory contract in writing.

The appellee, relying upon the bond sued upon, sought the aid of the chancellor to compel the appellant to specifically execute the contract evidenced by the writing. To that the appellant answered that

the bond was intended to evidence a partnership between them in the purchase of an individual one-third part of forty acres of land, and that they were in fact partners in the purchase; that the title had failed, and only five acres had been secured; that the unconditional bond for the conveyance was executed under a mistake as to its legal effect, and he ought not to be bound by it.

The whole cost of the land, including interest, is a little more than $5,000 and it is now worth $20,000. The entire payments made by the appellee, including interest, do not amount to $3,200. The appellant has paid out over $2,200, including interest, and has given as much personal attention as the appellee to securing the title to the five acres. If, then, it be true, as claimed by the appellant, that the purchase of the land was a joint venture, it would be most inequitable to specifically enforce the covenants in his bond to the appellee, the effect of which would be to give to the latter $20,000 worth of property for $3,200, while the former would lose all his investment and his personal exertions in the matter.

While, therefore, if the appellant were suing for the purpose of having it adjudged that the purchase was upon joint account, he could not maintain his suit unless the contract were in writing, the case is altogether different when he sets up such a parol agreement as a defense to a suit for specific performance. Courts of equity will let in the defendant to defend himself by evidence to resist a decree, where the plaintiff would not always be permitted to establish his claim by like evidence. Thus, for instance, the defendant may show that material terms have been omitted from the written agreement, or that there has been a variation of it by parol, or that there has been a parol discharge of the written contract. "The ground of this doctrine is * * * that courts of equity ought not to be active in enforcing claims, which are not, under the actual circumstances, just, as between the parties." Story's Equity, Sec. 770.

The specific execution of contracts is not a matter of right, but rests in the judicial discretion of the chancellor (Story, Sec. 742); and whenever it appears, no matter by what character of evidence, that under the existing circumstances it would be inequitable and oppressive to decree performance in specie, he will withhold his assistance unless it be accepted upon equitable terms, and leave the plaintiff to seek redress at law.

We do not think the appellant made out his claim to be reimbursed for the Bradley note. Assuming that the land was purchased upon joint account, and that the appellee was originally liable for one-half

of the note, yet if it had been paid before maturity it is clear that Bradley could not have compelled payment. The loss, therefore, resulted from its premature payment, and having been paid by the appellant, as we think, without notice to or consent of the appellee, the former must bear the loss resulting from its unauthorized payment.

Upon the basis of a joint purchase the accounts were not difficult to adjust, and we perceive no error in that respect. The plan adopted by the commissioner was to ascertain the entire cost of the property, including the purchase money paid (except the Bradley note), and interest thereon, and expenses such as attorney's fees and personal expenses of the parties. That basis gave the sum of $5,402.86 as the aggregate cost, of which the appellee paid $3,110.41, and the appellant the residue, making the excess of appellee's payment over those of the appellant $817.96, one-half of which, viz., $408.98, the commissioner found to be due to the appellee from the appellant. The commissioner then found that the appellee was indebted to the appellant in certain small sums, which, being deducted from the balance as above stated, left the sum of $354.18 due to the appellant at the date of the report, for which the court rendered judgment.

Counsel for the appellant has fallen into error in his calculation by omitting to take the interest and the money invested into the account. The first payment of $1,666.66 was made by the appellant in October, 1855, and from that time to October, 1858, he was entitled to interest on that sum. But upon $1,073.77 of the amount invested at that time the appellant received interest from the appellee at six per cent., while he was only paying five per cent. But leaving out of the account the difference in rate of interest, which only continued for two years, the appellant was paying to the appellee nearly two-thirds of the amount of interest the appellee was paying on the amount paid on the land. That proportion of payment continued until October, 1858, when the appellee paid his rate for $1,073.77, thus reimbursing to the appellant all of the first payment except the sum of $592.89. As long as interest was paid on the notes to Bradley and Hadduck the parties paid it equally, so that in point of fact after October, 1858, the appellee had invested $480.88 more than the appellant, and in equity he is entitled to interest upon it, and allowing it, the discrepancy between the calculation of the commissioner and of counsel will be removed.

The greater part of the costs was incurred on account of the contest respecting the partnership, and we think the court did not err in adjudging that each party should pay one-half of the costs. The

commissioner is not made an appellee, and as the allowance complained of was made directly to him, we cannot reverse the order making it.  We perceive no error to the prejudice of the appellant in refusing to allow more than $25 for the services of his son in going to Chicago upon business concerning the land in dispute.  No facts are disclosed showing that it was necessary, or even expedient, that an attorney should be taken from Louisville.  The sum allowed would, no doubt, have secured an attorney in Chicago, who could have done all that was done by Mr. Polk, even if the employment of additional counsel were necessary.

As·we have already said we are by no means confident that the decision of the vice chancellor that the purchase of the land was on joint account is correct, but we have been unable to say with any greater confidence that it is incorrect.  Upon the other points made we fully concur with him, and·the judgments and orders appealed from are *affirmed* on the original and cross-appeal.

*William Reinecke, for appellant.   A. Barnett, for appellee.*